# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | 3:19-CR-00234 |
| v. | |
| | (MANNION, D.J.) |
| MIGUEL DOTEL, | (MEHALCHICK, M.J.) |
| Defendant | |

## MEMORANDUM

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 65). Defendant, Miguel Dotel, moves this Court to reconsider its earlier order of detention, and to order the temporary release of Dotel due to the compelling reason of the COVID-19 pandemic, the parties having executed a plea agreement in his case, and his daughter being born. Dotel moves pursuant to 18 U.S.C. § 3142(i). The Government opposes this motion. (Doc. 68).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On July 19, 2019, Dotel was charged in a Criminal Complaint with drug trafficking and firearms offenses. (Doc. 1). At his initial appearance on the Complaint, Dotel was ordered detained after the Court determined that there was no condition or combination of conditions of release which would reasonably assure the safety of any person or the community. Specifically, the Court found that the weight of the evidence against Dotel and the potential length of his sentence weighed in favor of detention, and he was detained pursuant to 18 U.S.C. § 3142(e). (Doc. 12). Dotel was charged by Indictment on July 30, 2020; he remained detained following his arraignment on those charges.

Since that time, Dotel has remained in custody, and in mid-April, reached a plea agreement with the Government, a copy of which was filed with the Court on April 14, 2020. (Doc. 55). Under the terms of the filed agreement, the Defendant will plead guilty to a drug trafficking conspiracy involving over 100 grams of heroin and over 40 grams of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. The offense to which Dotel has agreed to plead guilty carries with it a mandatory minimum period of imprisonment of five years and a maximum period of 40 years. Given the additional terms of the agreement, the Government anticipates that Dotel will face an advisory sentencing guideline range of 70 to 87 months. The agreement also includes an acknowledgment that, as he is not a citizen of the United States, deportation is a consequence of the plea. A change of plea hearing is scheduled for August 20, 2020.

Dotel is currently housed at Lackawanna County Prison. In the instant motion, brought pursuant to 18 U.S.C. § 3142(i), Dotel seeks an order of temporary release due to a compelling reason – that being the risk associated with being incarcerated during the current COVID-19 pandemic. Dotel asserts that he has hypertension and a BMI greater than 30 and that these conditions place him at a unique risk of serious illness should he contract COVID-19. He also asserts that because he has entered a guilty plea to a lesser charge than those for which he was originally charged, that changed circumstance warrants reconsideration of the detention decision.

Counsel for Dotel filed a Notice with the Court on July 17, 2020 indicating that the parties were unable to come to an agreement regarding either Dotel's release from detention or whether a hearing is necessary on this motion. (Doc. 67). The Court is unaware of any authority that provides a defendant with a right to a hearing when he seeks temporary release

under § 3142(i), and the Court is able to resolve the motion without a hearing or oral argument.

**II.    DISCUSSION**

 A. THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[1] The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency.[2] As of the date of this writing, there are 20,730,456 confirmed cases worldwide and 751,154 deaths; in the United States, there are 5,150,407 confirmed cases and 164,826 deaths.[3] Mindful of the incredible magnitude of this situation, and the extreme health risks associated with COVID-19, the Court will address Dotel's motion for pretrial release.

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited April 6, 2020).

B.     CONDITIONS AT LACKAWANNA COUNTY PRISON

Attached to the Government's brief in opposition (Doc. 68) to Dotel's motion for pretrial release are the preventative actions taken by Lackawanna County Prison in response to the COVID-19 pandemic. (Doc. 68-1). Specifically, the prison implemented an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-county trainings; planning for weekly contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area.

In addition to the above measures and precautions, effective March 20, 2020, the Warden of Lackawanna County prison began requiring that all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison. (Doc. 68-1).

C.     TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(I)

Dotel moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act. That section provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*

18 U.S.C. § 3142(i) (emphasis added).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

Until earlier this year, most motions brought pursuant to § 3142(i) were analyzed under the "necessary for preparation of the person's defense." Not much authority existed as to when temporary release is justified under § 3142(i) based on "another compelling reason." Typically, relief was granted under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see also United States v. Scarpa,* 815 F. Supp. 88 (E.D.N.Y. 1993) (permitted the defendant to be released under the 24-hour guard of the United States Marshal Service at his own expense because the defendant had sustained a gunshot wound that destroyed his left eye and surrounding area of his face and skull, he would "shortly die" from terminal AIDS, and correctional authorities could no longer manage his medical conditions.); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 144-47 (D.P.R. 2002) (district court ordered the release of a defendant who had sustained multiple gunshot wounds, was partially paralyzed, could not walk, had lost some arm function, had a wound the size of a fist, and required 4-5 contracted security guards on a daily basis to supervise him; the Bureau of Prisons would not take custody of him because it could not provide the medical care that he required.) Most recently, in *United States v. Garcha*, the Court granted defendant's motion for pretrial release pursuant to § 3142(i) where the defendant was HIV-positive, had a brain tumor, and suffered a pulmonary embolism in 2017,

and thus was not only particularly susceptible to contracting the COVID-19 virus, ***but was also unable to obtain the necessary MRI and treatment for his brain tumor while in prison.***) 2020 WL 1593942, at *2 (N.D. Cal. Apr. 1, 2020) (emphasis added).

Since the onset of the COVID-19 pandemic, and the filing of motions seeking pretrial release, release pending sentencing, compassionate release, and delays in report dates, courts across the country have begun to consider whether the pandemic constitutes a "compelling reason" for temporary release. Consistent in these decisions are findings that the risk of exposure, actual exposure, or contracting the virus, is just one factor to be considered and weighed against the other factors under the Bail Reform Act, including previous findings of danger to the community and risk of flight. Further, the existence of a widespread health risk or mere speculation about potential exposure to the virus does not constitute a "compelling reason" for temporary release under § 3142(i).[4]

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply

---

[4] In considering an application for compassionate release, the Court of Appeals for the Third Circuit recently noted "… the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). In considering a motion to continue a self-surrender date in light of the COVID-19 pandemic, the court noted that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief. *Roeder*, 20-1682, 2020 WL 1545872, at *3.

the proper legal standards that govern an individual's particular request for relief. *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

In reviewing a § 3142(i) motion related to COVID-19, the Court examines the (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See United States v. Veras,*, 2020 WL 1675975 (M.D. Pa. Apr. 6, 2020). These factors are particularly instructive in balancing the risk of exposure in prison against the other factors to be considered under the Bail Reform Act. *Veras*, 3:19-CR-010, 2020 WL 1675975, at *5-6; *United States v. Clark*, 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020) (analyzing defendant's motion using the *Clark* factors and denying the motion where the defendant's motion is speculative, the original grounds for detention remain unchanged, and the risks of exposure are not mitigated for the defendant, and possibly increased for others); *United States v. Lunnie,* 4:19-CR-00180 KGB, 2020 WL 1644495, at *1 (E.D. Ark. Apr. 2, 2020) (motion denied based on analysis of *Clark* factors despite defendant's history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen); *United States v. Dodd*, 20-CR-0016 (NEB/HB), 2020 WL 1547419 (D. Minn. Apr. 1, 2020) (denying motion for temporary release after considering the *Clark* factors).

First, this Court has previously determined that there is no condition or combination of conditions which could reasonably assure the safety of the community should Dotel be released – consideration of the § 3142 factors results in a finding that detention is warranted.

Second, although Dotel submits that his health issues place him at greater risk of contracting the virus, nothing in the record reflects that he is not receiving necessary treatment for his conditions while in Lackawanna County Prison, or that the prison is not taking steps to mitigate his risk for infection. Although mindful of the magnitude of the COVID-19 pandemic, and the extreme health risks it presents within the jail and prison setting, "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *Boatwright*, 2020 WL 1639855, at *8; *see also Raia*, 2020 WL 1647922, at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

Third, Dotel's proposed release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark,* 2020 WL 1446895, at *6. Dotel submits that he would reside in Hazleton with the mother of his daughter, and would be amenable to any conditions of release, including home confinement and electronic monitoring. The proposed plan does not address any of risk factors that would arise if Dotel were released from custody. *Clark,* 2020 WL at 1446895, at *6. The Government has provided information on the prison's steps to address and mitigate the risks of COVID-19. Despite Dotel's conclusory allegations that he has a heightened risk of contracting COVID-19 due to his pretrial detention, the information before the Court includes the prison's actual plan to reduce that risk. *Boatwright,* 2020 WL 1639855, at *7. Further, Dotel does not address the extent to which his risks of infection could be exacerbated if he were to be released.

Finally, the Court considers the likelihood that Dotel's proposed release would increase COVID-19 risks to others. If Dotel is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing

shelter-in-place orders in many cities and counties. *Boatwright*, 2020 WL 1639855, at *8. Dotel's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on supervised release. *United States v. Lee,* 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). If and when Dotel's proposed temporary release[5] plan ends, it will place the United States Marshals Service officers at risk in re-apprehending him or the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. *See Lunnie*, 2020 WL 1644495, at *5.

Additionally, Dotel submits that his executed plea agreement to a lesser included charge and the birth of his daughter are compelling reasons for temporary release under § 3142(i). The Court is unpersuaded that they are, and the original grounds for Dotel's detention remain the same. First, as to his plea agreement, although his minimum term of sentence has been reduced based on the plea agreement, he is still facing a five-year mandatory minimum term of imprisonment. The filing of the agreement indicates that Dotel will be admitting guilt. That charge still carries with it a presumption of detention under 18 U.S.C. § 3142(e)(3).[6] As such, the factors that weighed in favor of detention originally – a lengthy potential sentence and the weight of the evidence against the Defendant – still weigh in favor of detention. As to

---

[5] Having determined that Dotel does not establish a compelling reason for temporary release under § 3142(i), the Court will not reach what the scope of "temporary" might mean in this situation.

[6] Further, upon entering a guilty plea, pursuant to § 3143(a)(2), detention will be mandatory unless (1) there is "a substantial likelihood that a motion for acquittal or new trial will be granted" or "the Government has recommended that no sentence of imprisonment be imposed" and (2) the Court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."

his daughter, the Court does not find this to be a compelling reason for temporary release. *See United States v. Mendoza*, 5:20-MJ-00011, 2020 WL 1663361, at *2 (M.D. Pa. Apr. 3, 2020) (finding, in part, that Defendant should remained detained despite expected birth of his child).

III.   **CONCLUSION**

For these reasons, the Court finds that Dotel has not presented a "compelling reason" for temporary release under 18 U.S.C. § 3142(i). As such, his motion for pretrial release (Doc. 65), is **DENIED**.

An appropriate Order will follow.

**Dated: August 14, 2020**                                            *s/ Karoline Mehalchick*
                                                                                    **KAROLINE MEHALCHICK**
                                                                                    **United States Magistrate Judge**